FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Jacksonville Division

2012 MAY 22  PM 2: 35

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FL
JACKSONVILLE FLORIDA

**VICTORIA CARTER,**

**Plaintiff,**

v.

**CIVIL ACTION NO.:**

3.12-CV-610-J-99TJGmie

**AT&T CORP. and AT&T UMBRELLA
PLAN NO. 1,**

**Defendants.**

_____ /

## COMPLAINT

**COMES NOW** the Plaintiff, Victoria Carter ("Plaintiff"), by and through the

undersigned counsel, and hereby brings this Complaint against AT&T Corp. ("AT&T")  and

AT&T Umbrella Plan No. 1 (the "Plan") (collectively the "Defendants"), and alleges as follows:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 and 29 U.S.C. § 1132(e).   This action arises under the Employee Retirement

Income Security Act of 1974, 29 U.S.C. §§1001 *et seq.* ("ERISA"), and more particularly 29

U.S.C. §§1132(a)(1)(B) and 1140 thereof. This court has jurisdiction under 29 U.S.C. §1132(f),

which grants to the federal courts concurrent jurisdiction to determine claims under 29 U.S.C.

§§1001 *et seq.*

2.      Relief is authorized under ERISA pursuant to 29 U.S.C. § 1132.

3.      Venue is proper pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2)

as Plaintiff Carter resided in the Middle District of Florida at the time of the making of the

Defendant resides in the Middle District of Florida, and the events from which the cause of

action arises occurred within this district.

## PARTIES

4.      Plaintiff Victoria Carter is an adult female citizen of the State of Florida and a
resident of Jacksonville, Florida.

5.      Defendant AT&T Corp. is a communication company existing under the laws of
Florida with offices located throughout the State of Florida, including Jacksonville.

6.      At all times relevant hereto, AT&T employed Plaintiff working through a
Jacksonville office location.

7.      At all times relevant hereto, Defendant AT&T Umbrella Plan No. 1 maintains as a
program the BellSouth Short Term Disability Plan ("Short Term Disability Plan") for Non-
Salaried Employees.  Defendant Plan is administered from Lexington, Kentucky.

## FACTS GIVING RISE TO RELIEF

8.      Ms. Carter was hired by AT&T on July 28, 2008 as a Directory Assistance Sales
Representative in Jacksonville, Florida.

9.      Beginning in May of 2009, Ms. Carter experienced disturbing developments in the
workplace when she reported to her supervisor, Al Morris, that the wife of co-worker Elliot
Hartman, was stalking and harassing Ms. Carter. In late November of 2009, Ms. Carter was
forced to seek a restraining order against Hartman's wife.

10.     In December of 2009, Ms. Carter contacted the human resources department in
Atlanta for AT&T and reported that the stalking and harassment by Hartman's wife was going on

2

during business hours.

11.     Even though Ms. Carter denied having any involvement with Hartman she was told to "stay away" from Hartman by General Manager, Matt Currey because of the rumors of an affair between Ms. Carter and Hartman. Hartman did not receive the same warning. This occurrence marked the first occurrence of unlawful gender discrimination against Ms. Carter.

12.     Immediately following Ms. Carter's communication to Mr. Morris she began receiving excessive criticism on job performance, micromanagement, and intense scrutiny of her work by both Morris and Currey. Contracts Ms. Carter would negotiate well within company guidelines were unreasonably and uncharacteristically picked apart by Morris. Discounts that other sales agents were able to get approved for their deals with advertisers were not being approved for Ms. Carter and in some instances deals with even less discounts were not being approved.

13.     Based upon this disparate treatment Ms. Carter was receiving, on January 7, 2010, Ms. Carter filed charges of discrimination against AT&T with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

14.     After the filing of her EEOC charge on January 7, 2010, Ms. Carter experienced retaliation from management of AT&T. In January, 2010, Ms. Carter was singled out by Morris to discuss the YP Connect Presentation exam which she had previously taken. Ms. Carter was informed by Morris that she had not passed it, but immediately following her taking the exam the administrator of the exam Ted Kokkinos, Internet Sales Manager, informed her that she had passed. As a result of this "fail", Morris required Ms. Carter to "demo" the product when no one

3

else at that time was required to do so. At that time, Ms. Carter's sales results with this product were as high as any of her counterparts in the office. In fact, at that time there were other co-workers that had not even sold the product.

15.     While in the field, Ms. Carter was contacted by Currey and Morris when they angrily and disrespectfully called for Ms. Carter to return to take the exam that they claimed she had not finished and failed. When Ms. Carter got a flat tire and was unable to make it back to the office within the timeframe that Currey and Morris were requesting, she was unreasonably requested to take a picture of the flat tire and asked to forward a receipt for the replacement of her tire to prove that she was telling the truth.

16.     After returning to the office the next day, a co-worker explained that she overheard Morris and Currey speaking with Ms. Carter on the phone the previous day and the co-worker was shocked to hear how disparaging Currey and Morris were speaking about Ms. Carter.

17.     Ms. Carter contacted AT&T's ethics hotline of the Corporate Human Resources Department in Atlanta to notify them of the harassing treatment she was being subjected to.

18.     As further evidence of retaliatory behavior against Ms. Carter, in mid-March 2010, Ms. Carter asked Morris to ride along with her on some of her sales account visits. While it was standard practice that a manager should be present to help "save" the account from being lost, Morris would commit and then cancel at the last minute.

19.     On March 14, 2010, Ms. Carter had a meeting with Currey, Morris and union stewards, which was deemed a "come to Jesus" meeting by Currey. At this time, it was observed by Ms. Carter that Morris had a hostile attitude towards Ms. Carter.  The harassment of Ms. Carter continued and due to the constant harassment and hostile work environment that Ms.

4

Carter was experiencing for months resulted in her having severe health issues, including stress pain in her back, to the extent that she was required to take leave from April 12-15, 2010.

20.    In June of 2010, Ms. Carter was assigned a new manager, Amy Topnick, and was relocated to the Palatka area from the Jacksonville area but the hostile work environment continued. From the beginning of her work with Topnick, Topnick explained to Ms. Carter that she now had a chance to "redeem herself."

21.    On July 23, 2010 after leaving Topnick's office from going over reports, a co-worker entered and heard Topnick calling Carter a "dumb fuck."

22.    On July 28, 2010, Ms. Carter continued to have terrible stress pain in her back and could barely walk or drive. Despite the pain and stress from the workplace harassment, she continued to make her rounds and her pain was so evident that one of her advertisers even offered for her get therapy in his office to relieve her pain.

23.    In August 2010, Ms. Carter was moved to a third sales area that was located in Gainesville, Florida, for the Gainesville Campaign. Yet, the harassment in the workplace did not stop and on August 11, 2010, Topnick sent an email to Ms. Carter discussing discipline and possible termination based upon a "Claims Investigation" for which Ms. Carter was not even responsible.

24.    In mid-September Ms. Carter had to be take sick leave for a three day period due to stress related health issues. On the third day of her sick leave, after diligently trying to call Topnick, once at 7:55a.m and then again at 8:10a.m., she sent an email to Topnick to let her know that she would need to take another sick day. Late that morning, Topnick returned Ms. Carter's call while Ms. Carter was sleeping. Topnick stated in a voicemail message that if Ms.

Carter did not call back in one-half hour it would be considered an unexcused absence that would result in discipline.

25.     Through the month of September, Topnick continued to threaten Ms. Carter with unwarranted discipline and potential termination for issues regarding her report submittals and Ms. Carter's alleged failure to properly communicate with management. Topnick also continued with criticism and condescending emails that were not legitimate.

26.     Eventually, on September 28, 2010, Ms. Carter spoke with General Manager Miller, only to be met with more condescending speech. He responded, "guess you're in a bit of a pickle....You can't work with Al Morris and now Amy Topnick." The pattern of unfair criticism and scrutiny by management was a hostile work environment that caused Ms. Carter to be in a constant state of anxiety and uneasiness, resulting also in more back pain.

27.     On September 30, 2010, two of Ms. Carter's previously filed grievances were heard by Miller and two union stewards. Both of the grievances were ruled in Ms. Carter's favor.

28.     On October 8, 2010, Ms. Carter filed for short-term disability and went on medical leave for her back problems as well as the health effects of high levels of anxiety and stress, due to the harassment and retaliation in the workplace that Ms. Carter has faced.

29.     In September 2011, AT&T did not allow Ms. Carter to return to work with an accommodation of any type, despite her request.

30.     Ms. Carter was denied her claim for short term disability request under the Short Term Disability Plan on February 8, 2011. Ms. Carter administratively appealed AT&T's denial of her claim.

31.     Thereafter, AT&T terminated Ms. Carter's employment effective September 19,

6

2011.

32.     On September 20, 2011, Ms. Carter filed an amended charge with the

EEOC, which also requested that the charge be dual filed with the EEOC and indicated that the

unlawful discrimination continued and retaliation occurred against her subsequent to her

previous filing in January of 2010.

33.     Ms. Carter was further denied her short term disability per the Short Term

Disability Plan and the Plan issued a final appeal denial on or about January 27, 2012, which

exhausted Plaintiff's administrative remedies under the plan.

34.     All conditions precedent and exhaustion of administrative remedies, if any, to this

action have been satisfied and this action is timely filed.

## COUNT I
### (BREACH OF PLAN BY FAILURE TO PAY BENEFITS, 29 U.S.C. § 1132)

35.     Plaintiff restates and realleges each and every factual allegation contained in

paragraphs 1 through 34 of this Complaint with the same force and vigor as if set out here in full.

36.     Plaintiff's personal physician stated that plaintiff was in fact disabled from

returning to work as an analyst due to her physical illness.

37.     Plaintiff accordingly applied for benefits under the Plan's Short Term Disability

Plan, and was denied.  Plaintiff appealed Defendant Plan's decision in accord with the

requirements of her policy, and that appeal process has been exhausted as set forth in a letter to

plaintiff dated January 27, 2012. No payments have been received by plaintiff, under the Short

Term Disability Plan at issue.

38.     The relevant portion of the Plan's Disability Income section reads, in pertinent

part, as follows:

7

"Disability" means as of the eighth consecutive calendar Day of Absence a

medical condition supported by objective medical evidence, which (I) makes a

Participant unable to perform any type of work as a result of a physical or mental

illness or an accidental injury or (ii) results in a Participant receiving treatment

that qualifies as a Chemical Dependency Confinement. "Any type of work"

includes the following regardless of availability: (a) the Participant's regular job

with or without accommodations, (b) any other Participating Company job with or

without accommodations, or © temporary modified duties. . .

39.     Defendant Plan  breached its obligation under the Short Term Disability Plan by

denying coverage for Plaintiff's disability payments when Plaintiff met all of the above criteria

by submitting her treating physicians' reports which verified the physical and mental illnesses

and work disability. Defendant Plan simply disagreed with the treating physicians and acted

arbitrarily, incorrectly relying on their own consultants' subjective determination of the degree of

Plaintiff's disability instead of the findings and conclusions of Plaintiff's personal physicians.

40.     Plaintiff at all times herein mentioned has performed all the terms and conditions

of the Defendant Plan's Short Term Disability Plan on her part to be performed.

41.     As a proximate result of Defendant Plan's failure and refusal to perform its

obligations under the Short Term Disability Plan, Plaintiff has been compelled to retain counsel

to protect her rights under the plan, incurring legal fees and costs that are recoverable pursuant to

29 U.S.C. §1145.

8

## COUNT II
## (VIOLATION OF EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA), 29 U.S.C. § 1140/RETALIATION)

42.     Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 through 34 of this Complaint with the same force and vigor as if set out here in full.

43.     Plaintiff is entitled to ERISA protection and was qualified for her position as a Sales Representative with AT&T; a position in which she regularly performed at an exemplary level.

44.     Plaintiff was wrongfully forced from the workplace by Defendant AT&T in retaliation for, *inter alia*, exercising her rights under the Short Term Disability Plan.

45.     Specifically, Defendant AT&T forced Plaintiff from the workplace by making said workplace intolerable and thereafter terminating Plaintiff after she challenged and disputed the denial of her claim under the Plan.

46.     Among other things, the close temporal proximity between Plaintiff exercising her protected rights by making internal complaints and inquiries about the plan and the decision to terminate Plaintiff are sufficient to establish a causal connection between Plaintiff exercising her protected rights under ERISA and the adverse employment action of her termination from employment.

47.     Defendant AT&T's proffered legitimate nondiscriminatory reason for terminating Plaintiff because of a need to relocate the Well Workplace Coordinator position to Miami as part of a reorganization is not credible and is pretextual as the essential functions and duties of the position do not require the employee to be located in any particular geographical location within the State of Florida.  Moreover, Plaintiff was performing her job in a highly competent and satisfactory manner from the Jacksonville location.

9

48.     Defendant AT&T's proffered legitimate nondiscriminatory reason for terminating Plaintiff because of a need to relocate the Well Workplace Coordinator position to Miami as part of a reorganization is also not credible and pretextual as no other AT&T employees from the Jacksonville office and no other employees within Plaintiff's department were relocated during this time period.

49.     Defendant AT&T's intent to terminate Plaintiff was motivated by Plaintiff's complaints and inquiries about AT&T's Short Term Disability Plan.

50.     Defendant AT&T, by virtue of the conduct described herein, did violate the Employee Retirement Income Security Act, 29 U.S.C. § 1140 (Section 510) by retaliating against Plaintiff by terminating her employment because she engaged in protected activity and asserted complaints about Defendant AT&T's employee healthcare plan.

51.     As a direct and proximate result of said acts of Defendant AT&T, Plaintiff has incurred substantial losses including lost employment, lost back pay, lost benefits and potentially lost front pay.

52.     Plaintiff has retained the services of the undersigned law firm to represent her in this action, and has promised to pay said law firm reasonable attorneys' fees and costs for which AT&T is liable pursuant to the statutory provisions under 29 U.S.C. § 1132(g)(1).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Victoria Carter, prays that this Honorable Court grant judgment against the Defendants Plan and AT&T on the claim for relief herein, award Plaintiff equitable relief including: injunctive relief, reinstatement, restitution of lost benefits, back pay, front pay, pre-judgment and post-judgment interest, attorney's fees pursuant to 29 U.S.C. §

1132(g)(1), court costs, and such further relief as the Court deems just and proper.

Respectfully submitted,

Neil L. Henrichsen
Florida Bar No. 0111503
1648 Osceola Street
Jacksonville, FL 32204
(904) 381-8183
(904) 381-8191 (facsimile)
nhenrichsen@hslawyers.com
*Trial Counsel for Plaintiff*

11